IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARON D. CUNNINGHAM          :
                             :
   v.                        : Civil Action No. DKC 11-3484
                               Criminal No. DKC 08-0215
                             :
UNITED STATES OF AMERICA
                             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of Petitioner Baron Cunningham ("Mr. Cunningham" or "Petitioner"), to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (ECF No. 76).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Petitioner's motion will be denied.

**I. Factual Background**

On May 5, 2008, a single-count indictment was returned against Mr. Cunningham, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (ECF No. 10). Mr. Cunningham was arraigned on May 16, 2008 and entered a plea of not guilty. (ECF No. 11). Petitioner subsequently filed several motions, including: a motion to suppress evidence, (ECF No. 17), which Petitioner initially

---

[1] All citations to electronic court filings refer to the docket in the criminal case.

withdrew at a motions hearing held on October 8, 2009, (ECF No. 33), but later refiled on October 28, 2009, (ECF No. 40); a motion to dismiss the indictment for lack of jurisdiction, (ECF No. 35), which was denied by memorandum opinion and order issued on October 20, 2009 (ECF No. 37); and motions for discovery and inspection (ECF No. 41) and to quash criminal complaint (ECF No. 48), which were rendered moot when Petitioner pled guilty on December 1, 2009.

Petitioner entered into a plea agreement on December 1, 2009, the day his trial was set to begin. (ECF No. 52). Mr. Cunningham stipulated to the following facts as part of his plea agreement:

> On January 17, 2008, Prince George's County Police officers responded to 5800 Eastpine Drive, Riverdale Maryland, in response to a report of a suspicious vehicle. Upon arrival, officers observed a tan Honda sedan, which matches the description provided in the report. The car was occupied by a female in the driver's seat and Baron Cunningham in the front passenger seat.
>
> Officers approached and spoke with the occupants of the car. Cunningham was shaking and appeared nervous. A record check revealed an open warrant for Cunningham through the Prince George's County Sheriff's Office.
>
> Cunningham was arrested and searched. From his left jacket pocket, officers recovered a loaded Smith & Wesson 50, .38 caliber revolver, bearing serial number AVS2456. This firearm was manufactured in

> Massachusetts and, therefore, traveled in interstate commerce. The firearm was stolen in 2007 during the residential burglary in Riverdale, Maryland.
>
> Cunningham has the following felony convictions: 1) 7/1/1993 – carrying a dangerous weapon and attempted possession with intent to distribute cocaine in the District of Columbia; 2) 7/28/1994 – possession with intent to distribute cocaine in Prince George's County, Maryland; 3) 6/18/2002 – possession of cocaine in Prince George's County, Maryland; 4) 7/21/2003 – possession with intent to distribute cocaine in Prince George's County, Maryland; and 5) 2/15/2007 – credit card fraud in Prince William County, Virginia. Cunningham's civil rights, including the right to possess a firearm, have not been restored.

(ECF No. 53-1).

After several postponements at his request, Petitioner was sentenced on November 16, 2010 to 108 months imprisonment and three (3) years of supervised release, and ordered to pay a special assessment of $100. (ECF Nos. 73 & 83-3). On December 2, 2011, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 76).[2] The Government opposes the motion. (ECF No. 83).

**II. Standard of Review**

28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution

---

[2] Petitioner filed an "addendum" to his motion on May 23, 2013, which appears to be a reply. (ECF No. 85).

or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." If the Section 2255 motion, along with the files and records of the case, conclusively shows that petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied. *See* 28 U.S.C. § 2255(b).

**III. Analysis**

    **A.   Ineffective Assistance of Counsel**

Petitioner asserts claims for ineffective assistance of counsel based on his attorneys' performance during plea negotiations and during sentencing.[3]

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 688. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional

---

[3] Petitioner was represented by Andrew Skezely and Michael Lawlor during plea negotiations. He was represented by Jennifer Wicks during sentencing.

4

errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688—89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See id.* at 697.

**1. Third-Level Reduction under Section 3E1.1(b) of the Federal Sentencing Guidelines**

Petitioner asserts that attorneys Lawlor and Skezely rendered ineffective assistance of counsel by failing to attempt to obtain a third-level reduction in his offense level in

5

accordance with U.S.S.G. § 3E1.1(b) during plea negotiations. (ECF No. 76-1, at 8). Petitioner believes that attorney Wicks – who represented him during sentencing – was ineffective by "fail[ing] to make the appropriate request to the Court for the [third] level decrease." (*Id.* at 10).

Section 3E1.1 of the Sentencing Guidelines authorizes certain offense-level reductions if a defendant accepts responsibility for his criminal conduct. Section 3E1.1(a) authorizes a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Petitioner received this reduction. Petitioner takes issue with his attorneys' alleged failure to negotiate for an *additional* one-level reduction under Section 3E1.1(b), which provides:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct *by timely notifying authorities of his intention to enter a plea of guilty*, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

(emphasis added). Petitioner contends that he "avoided the Government the expense of preparing for trial," and as a result, was entitled to the one-level reduction. (ECF No. 76-1, at 8).

6

Petitioner fails to demonstrate that his attorneys acted unreasonably if or when they did not pursue a third-level reduction. First, it is within the discretion of the Government to move for a third-level reduction. *See, e.g., United States v. Divens*, 650 F.3d 343, 348 (4th Cir. 2011) ("Section 3E1.1(b) thus instructs the Government to determine simply whether the defendant has 'timely' entered a 'plea of guilty' and thus furthered the guideline's purposes in that manner."). Petitioner did not enter into a plea agreement until the morning of the first day of his trial. There can be no argument that Petitioner *timely* notified authorities of his intention to plead guilty, thereby permitting the Government to allocate its resources effectively. The reasoning in *Clark v. United States*, Crim. Case No. RWT 07cr281, Civ. Case No. RWT 10cv640, 2012 WL 253436, at *3 (D.Md. Jan. 26, 2012), applies here:

> Under U.S.S.G. § 3E1.1(b), the Court may grant an additional one-level decrease under that section only upon motion of the government where the defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial. . . ." *The Government would not have made such a motion if Petitioner had pled guilty the day before trial or on the day of trial because the Government still had to prepare for that trial.*

(emphasis added).

Petitioner's reliance on *United States v. Divens*, 650 F.3d 343 (4th Cir. 2011), is misplaced. The question in *Divens* was whether the Government could withhold a Section 3E1.1(b) motion because the defendant refused to sign a plea agreement containing an appellate waiver, even though he pleaded guilty to the charged offense without a plea agreement and signed a statement accepting responsibility. *Id.* at 344. The Fourth Circuit held that the Government could not withhold the reduction in *that* instance, because Section 3E1.1(b) is concerned only with the preservation of trial resources - not the "'expense and uncertainty' attendant to an appeal." *Id.* at 348. The Fourth Circuit noted, however, that the Government would be within its rights to withhold the reduction if there were a significant delay between the defendant's indictment and plea, thereby requiring the government to prepare for trial. *See id.* at 347 n.2; *see also United States v. Brown*, 26 F.App'x 151, 153 (4th Cir. 2001) (finding that a defendant who entered plea negotiations but did not plead guilty until after jury selection was not entitled to the Section 3E1.1(b) reduction). Here, unlike in *Divens*, the Government's decision not to move for an additional third-level reduction was not based on reasons unrelated to Petitioner's acceptance of responsibility. As the Government argues, "[t]he decision of counsel to not argue for a reduction in offense level that was within the Government's

8

discretion to grant and which the Government would not be likely to move for given the facts of this case cannot be said to render counsel constitutionally deficient." (ECF No. 83-4, at 6).

Based on the foregoing, Petitioner has failed to demonstrate that his attorneys acted unreasonably if or when they did not request a third-level reduction for acceptance of responsibility under Section 3E1.1(b).

### 2. Criminal History Points under Section 4A1.1(d)

Petitioner also argues that attorney Wicks rendered ineffective assistance when she failed to seek a variance due to the two point enhancement pursuant to Section 4A1.1(d), which adds points when a defendant was "under supervision" – i.e., on probation – when he committed the underlying offense. Petitioner asserts that "[t]he enhancement is harsh in this case based on Petitioner's recognition that he cannot reoffend now that he understands the draconian punishment he faces." (ECF No. 76-1, at 16). Ms. Wicks did argue, however, in the sentencing memorandum, that the court should disregard the two points added for being on probation, (ECF No. 71 at 6), and at the hearing, that the overall criminal history was inflated and should not be overemphasized in imposing a sentence. Counsel did not err as alleged.

### 3.     Criminal History Points under Section 4A1.1(b)

Next, Petitioner asserts that Ms. Wicks was ineffective for failing to object to the inclusion of two points for each of two prior convictions in the calculation of his criminal history category.  (ECF No. 76-1, at 17).  Petitioner was convicted in the Circuit Court for Prince George's County for possession with intent to distribute (in Case No. CT0300026X) and in the Circuit Court for Prince William County, Virginia, for credit card fraud (in Case No. CR64694).  (*See* ECF No. 83-2, at 10).  The Presentence Report reflected that in the case in Maryland, he received a three year sentence, with all but one year being suspended; in the Virginia case, he was sentenced to five years, all but one year of which was suspended and he received credit for time served.  (*Id.*).  At sentencing, the court was informed that a portion of each sentence was spent on home detention rather than in prison.

Section 4A1.1(a) of the sentencing guidelines adds three points for "each prior sentence of imprisonment exceeding one year and one month."  Section 4A1.1(b) adds two points for "each prior sentence of imprisonment of at least sixty days not counted in (a)."  Petitioner asserts, however, that in both cases, the entire sentences were suspended in favor of house arrest.  (ECF No. 85, at 2).  He further argues that the Virginia conviction resulted in a suspended sentence being

10

imposed for all but 45-50 days. (ECF No. 76-1, at 17). In neither case was the entire sentence suspended in favor of home detention, however. Rather, Petitioner received credit for time already spent in custody prior to sentencing.

Case law has been developing over time concerning whether home detention is a "sentence of imprisonment." The guideline manual does not list home detention in the application note. Rather, as quoted by Ms. Wicks, it reads: "Subsections (a), (b), and (c) of §4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house."

The Presentence Report was revised several times before sentencing, due to changes in Petitioner's criminal history record and changes in the sentencing guidelines. The final report was provided to the court only six days prior to sentencing and counsel did not receive it until the time of sentencing.[4] Petitioner's guidelines had been steadily reduced from the time of the plea (when it was thought he could be an armed career criminal).

---

[4] The final report reflected a guideline change effective November 1, 2010, just prior to sentencing.

Petitioner's argument that Ms. Wicks's representation somehow was constitutionally deficient because she failed to raise with the court the appropriate criminal history calculation based on his two prior convictions and the fact that he received home detention is belied by the record. She did raise the argument, albeit not as forcefully as she might have. After providing the court copies of the paperwork from each jurisdiction, Ms. Wicks stated, in relevant part:

> In each of these cases, well, specifically the Maryland case, Mr. Cunningham was sentenced to a period of three years with all but one year suspended, and he was placed, ordered by the Court to be placed on home monitoring. In the Virginia case he also received a suspended sentence and the jail placed him on electronic monitoring at his house. *While [] he still received sentencing of a year in each of these cases, the time, the minority of the time, and I think in one case, in the Virginia case he served about 50 days and in the Maryland case it was less than 30 was spent in the jail itself, and the rest was at home.*
>
> So while I don't think it specific – I think since he was sentenced to a year and it wasn't a halfway house, under the background, under 4(a)1.1, and I'm actually looking at the top of page 378 in my guidelines manual. It talks about the distinction between a sentence that's a year and a day or more, between 60 days and a year, and then less than 60 days, and it says all other sentencing, meaning less than 60 days, of less than 60 days, probation, fines and residency in a halfway house.

> And so I think because what ended up being not a sentence necessarily imposed in the Virginia case, but certainly the sentence imposed in Maryland, was not incarceration in a traditional sense. It was home detention. *So I think, I would just ask the Court again to consider that under the points assessed for his criminal history under the guidelines. And I think clearly to consider that in determining what the appropriate sentence is*.

(ECF No. 85-6, at 4-5) (emphases added). Counsel argued that Petitioner should, at least functionally, be considered in a criminal history IV.

Moreover, the question is not "what the best lawyer would have done or even what most good lawyers would have done," but merely whether a reasonable lawyer could have made the same decision under the circumstances. *See Gilbert v. Moore*, 134 F.3d 642, 655 (4th Cir. 1998) (*citing Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)); *see also Higgs v. United States*, 711 F.Supp.2d 479, 514 (D.Md. 2010).  "There are countless ways to provide assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  Once raised, and the available records produced, counsel had done what she should have.  Ms. Wicks obtained the applicable records, checked the guideline manual, and apprised the court of the difference between incarceration and home detention.  Unfortunately, neither the probation officer nor the

court fully understood the potential implications of the information. Furthermore, it remains unclear whether the Virginia sentence qualifies for assessment of two points, rather than one. There the decision to place Petitioner on home detention came from the Department of Corrections and not the court. Thus, the sentence was to incarceration, as indicated in the Presentence Report, and the home detention a type of parole. The Maryland sentence appears to have been imposed by the court at the time of sentencing. Counsel recognized this difference in her allocution. If only the Maryland sentence is reduced to one point, Petitioner remains in criminal history V.

Based on the foregoing, Petitioner has not demonstrated that his counsel was constitutionally deficient in connection with the calculation of his criminal history category.

**4. Appeal Waiver**

Petitioner contends that the attorneys who represented him during plea negotiations failed to "take the necessary steps to protect [his] appellate rights," by agreeing to an appellate waiver as part of Petitioner's plea agreement. (ECF No. 76-1, at 18). An appellate waiver is binding so long as it is made knowingly and voluntarily, judged by the totality of the circumstances surrounding the waiver. *See United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002) (considering validity of appellate waiver based on defendant's familiarity with terms

14

of the plea). Generally, if a district court fully questions a defendant regarding the waiver of appellate rights during a Rule 11 colloquy, and the record indicates that the defendant understood the significance of the waiver and was not denied effective assistance of counsel, the waiver is valid. *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005).

Petitioner has not alleged any facts which support the inference that his appellate waiver was a product of ineffective assistance of counsel. The record indicates that the court reviewed with Petitioner the "waiver of appeal" provision in his plea agreement during the Rule 11 proceeding, and Mr. Cunningham confirmed his understanding that he was forfeiting his right to appeal the conviction in this case. (ECF No. 83-1, at 16). Mr. Cunningham also confirmed that he understood the entire proceeding and that he wanted the court to accept his guilty plea. (*Id.* at 19). Accordingly, Petitioner has not demonstrated that his attorneys rendered ineffective assistance by the inclusion of the waiver of appeal provision in the plea agreement.

   **5.   Sentencing**

Petitioner argues that he received ineffective assistance of counsel during his sentencing proceeding for two reasons. First, Mr. Cunningham asserts that counsel was deficient in failing adequately to communicate to the court the sentencing

factors contained in 18 U.S.C. § 3553. (ECF No. 76-1, at 11). Specifically, Petitioner states that despite his request to be housed in a facility which provides education programs, he is incarcerated in a facility which does not provide such services. (*Id.* at 12). Petitioner contends that "[t]he Bureau of Prisons simply cannot satisfy this § 3553 factor, and counsel failed to investigate this issue properly and make a constitutionally required presentation to this Honorable Court." (*Id.* at 14).

Petitioner's arguments are meritless. His defense counsel informed the court at sentencing about his desire to be housed in a facility which offers college programming. (ECF No. 83-3, at 12-13). Ms. Wicks stated:

> Mr. Cunningham is asking the Court to make a recommendation that he be placed in a BOP facility that has college programming. The employment problems that Mr. Cunningham has, and I think often times the root of continued contacts with the criminal justice system for someone who has a history is that they don't have appropriate job training or job skills to find employment.
>
> He can't, because of his condition, he had to stop being a barber because he couldn't stand for long periods of time. He needs training in an area where he will be able to find employment and hopefully be able to conduct that employment. So he's asking for the Court to make a recommendation to the BOP that he be placed, the two closest facilities that have college programming are in Kentucky, in Ashland, which I believe is an FCI, or McClery, but I believe it's just the camp at McClery, so we

16

>would ask for a recommendation for FCI Ashland in Kentucky.

(*Id.*).

The Government correctly argues that the fact that the Bureau of Prisons did not place him in a facility that offers college programming does not constitute error on the part of his attorney. Indeed, Petitioner was advised during sentencing that placement in Kentucky would be recommended, but "whether the Bureau of Prisons will be able to agree to that [] is up to [them]." (*Id.* at 21). Petitioner's argument that the court was not apprised of the Section 3553 factors is also unavailing. At sentencing, the court outlined consideration of the sentencing guidelines and "all of the other factors," which may properly be considered under 18 U.S.C. § 3553. (*Id.* at 20).

Next, Petitioner argues that his counsel failed to object to an "outrageous and inflammatory argument" concerning a prior coram nobis of Petitioner in a state criminal case. (ECF No. 76-1, at 13-14). Petitioner contends that the Government's argument regarding the coram nobis was not relevant to the § 3553 sentencing factors and that his counsel was inadequate by failing to object to this argument. The record indicates, however, that the Government referenced the coram nobis for a legitimate purpose related to sentencing. The Government stated during sentencing that it was not "arguing the merits of the

coram nobis, and [] not asking the Court to use that conviction" but that it was being offered for the court to consider in the context of understanding Petitioner's prior criminal history. (ECF No. 83-3, at 9-10). Moreover, Petitioner's counsel *responded* to the Government's point regarding the coram nobis:

> clearly there is the case where he received a coram nobis, and I understand what the Government is arguing, but at the same time, if I was at a plea proceeding, and I think if the Court were presiding over a plea proceeding and then the defendant said "Yes, I have used drugs in the last 24 hours or 48 hours," there would be [] further inquiry. In this proceeding there wasn't, and I think that the parties there were at fault to not inquire further and that was the issue there.

(*Id.* at 14). Finally, Petitioner's argument that his attorney was ineffective in this regard is further undermined by the fact that the court did not use the underlying coram nobis conviction in calculating his sentence, which fell well within the guideline range and *far below* the sentence of 180 months that the Government indicated in the plea agreement it would recommend. (*See* ECF No. 53, at 5).

Based on the foregoing, the habeas petition will be denied.

### B.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is required to issue or deny a certificate of appealability when it enters a final

order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard.  Accordingly, the court will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

## IV. Conclusion

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence will be denied.  A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge